Our final case this morning is No. 23-1192, Melson v. United States. Okay, Ms. Al-Shabazz. Good morning, Your Honors. May it please this honorable court... I don't hear myself. Working? It's intermittent. It was working just fine for everyone else. Now it's working. Good morning again. May it please this honorable court. My name is Aikisha Al-Shabazz, and I, along with my co-counsel, Mark Crawford, represent the plaintiff appellant, Dr. Rudy Melson, on this appeal. Your Honors, we are asking that the court reverse the lower court that granted the government's motion for summary judgment on the administrative record. This court decided in Steven v. United States that the plaintiff would need to show that personnel was involved that ignored relevant and competent evidence, two, that they unreasonably construed the significant body of medical documentation, or that in any other manner they failed to discharge their designated duties. And it is the position of the appellant that the board, in fact, failed on multiple levels. First, the board failed to consider the entirety of Dr. Melson's medical history. Instead, they picked and they cherry-picked the fact that he had Lyme disease a year before he got into the military. They cherry-picked that he had an injection for his finger, a cortisol injection for his finger. But they completely disregarded the record where it shows that he was fit for duty on multiple times, that he completed and successfully passed his medical examinations, that he participated in unit activities. And that is where the record indicates that he suffered injuries. The record is clear that while he may have had some injury pre-existing before he came in, it definitely was exacerbated by the unit activities. Next, the Army Board of Corrections and Military Records, their actions were arbitrary and capricious and not supported by the evidence in the record. The record states that Dr. Melson was able to perform all of his duties, that he passed the USMA Academy, and that he was treated for a line-of-duty injury, that he had good mental and physical health. Do you agree that there is a difference between the standards for appointment and retention? Yes, Judge, I do agree. And I think it's a distinction without a difference only in this case. In this case, because this particular service person was participating in a simultaneous program. In a simultaneous program, Army regulations require that if you are disenrolled, that you must be simultaneously discharged. And for some unknown reason, for which the record is silent, for which the board gave some sort of deference, there is nothing to explain why he was not simultaneously discharged. And that did harm him. He should have been given a physical evaluation board because his disenrollment was based on the fact that he was physically unable to do the job. So naturally, what should have happened next was that he was discharged simultaneously because this was a simultaneous cadet program. So that's the only position the government is taking, is that we have somehow misconstrued the difference between enrollment and discharge. We haven't. What we're saying is that they should have happened at the same time. How could he remain in the military if he didn't qualify for an appointment to an officer position? He couldn't. And that's exactly the point, Judge. If he had been given a physical evaluation board, which should have been triggered once he was disenrolled, then it would have been determined, it's our position, that he was disabled. And he would have been eligible for disability pay. But instead of doing that, they said there's nothing in the record for us to make a determination as to what happened in that five-month period. This is the military. How could the military not be able to account for an entire five-month period of a service member's record? It should not be accepted by any court. It should not be countenance by this court. And I submit that that is evidence that their decision was irrational. It was arbitrary and capricious. Further, Your Honor, the board found that Dr. Nelson was not harmed. That also is irrational. Because, one, if he had been given a physical evaluation board or a medical evaluation board, then maybe he would have been qualified for disability pay. The second thing, that because he was discharged and it was classified, uncharacterized, he was ineligible for the full GI Bill. And as the court knows, his dedication to not only the armed services led him to continue in the military even after. The next thing I want to say, and I would ask the court to look at the Honorable Judge Meyer's decision in granting the government's motion. In its footnote one on page three, Judge Meyer observes that he could have sent this back to the board for further consideration of the fact that Dr. Nelson had a waiver for ROTC. That waiver basically said he was fit for duty. And that it would rebut the board's conclusion that the preexisting conditions that he had was not connected to his service. Everything in the record suggests that it was. There is nothing in the record that indicates that any preexisting condition that the board may have found impacted Dr. Nelson's participation in his unit. For over a year, he participated in that unit and only one time, only one time, did he report that he had an injury in his leg. And that injury was as a result of him participating in unit Trojan games. Any other time in the record was a result of him participating in bear crawling activities. Everything in the record suggests that any condition he may have had has been exacerbated by his participation in basic training and other unit activities. Furthermore, the lower courts reading that in that five-month period, he continued to drill and participate in activity, there's nothing in the record to support that. Nothing whatsoever. Counsel, so what you're arguing is not that your client should not have been discharged, but that he should have been discharged with a disability. Yes. But once the disability was known by most of the parties involved, Mr. Nelson continued, I don't know what you call it, he continued his participation for five months. He did not. So he was separated and that's the problem is that the record is silent as to what participation means. He was sent back to his unit, but he did nothing there for five months, Your Honor. And the record is silent. He literally did nothing. He literally was not, he did not participate. He did not do any unit activities. Is that in the record? There's nothing in the record. The record that's before us, is that in the record that he did nothing when he was sent back? What's in the record before us is that he was sent back to his unit. That's it. The board did not undertake any findings to determine what happened in that five-month period. The board did not seem to undertake why the military regulations weren't followed so that he, which prevented him from being discharged when he was disenrolled. Now if the board had followed their own regulations or military personnel had followed their own regulations, Army Regulations 601-210 makes a provision for a simultaneous membership program cadet who was disenrolled. from ROTC to be retained in their enlisted status by their reserve guard TP unit until the expiration of their contractual or statutory service obligation. Yet, in the same vein, there is a caveat that says provided the soldier is not otherwise processed for discharge under provisions of Army Regulation 135-178. And that was what Dr. Nelson falls under. He was, in fact, discharged under that provision. Under Army Regulation 135-178, Chapter 15, Paragraph 8, that is the medical discharge, which states that because it's simultaneous, he has to both be disenrolled and discharged at the same time. But that happened. It didn't. That's the thing, Judge. It didn't happen. He was disenrolled and then in May... He was disenrolled from the ROTC? Correct. Now I understand he was disenrolled not because he could not fulfill the duties being in ROTC, but because he should have never been appointed. That is not correct, Your Honor. Or I would disagree with the court's assessment. He received a waiver to participate in the ROTC, which found that he was fit, which is one of the things which the Honorable Judge Meyer said the board didn't consider. Can you point us to the waiver in the record? So, Judge, it is not in the record, and the Honorable Judge Meyer makes mention of that fact, that the waiver is not in the record. However, he does mention that the board did not consider it, and that he could remand it for the board to further consider that in his footnote on page three, which is footnote one, which is my position that that supports our position that the board didn't consider all the substantial evidence. If the court is considering sending it back for further consideration, and we're not asking for that relief. We're not asking that this court send it back for remand. We are asking that this court resolve this in Dr. Nelson's favor, that the board did not fully consider all of the relevant medical evidence, that the board did not comply with its own guidelines, which there would make it per se arbitrary and capricious. But let me see if I can understand what your argument is. Are you saying that he has to meet the standards for appointment, or that he doesn't have to meet the standards for appointment? You went out. Sorry, Judge, you went out. Is your argument that he did not have to meet the standards for appointment, or that he did meet the standards for appointment? My argument is that once he failed to meet the standards for appointment, and he was disenrolled, that he should have also been discharged because of this particular type of program, this SMP, this Simultaneous Cadet Program. He couldn't be retained. It was not possible for him to be retained once he was disenrolled. Okay, so the argument, you're not contesting that he didn't meet the standards for appointment. We are not contesting that. No, we are not contesting that. What we're saying, in fact, is he didn't know. That was part of the argument for the statute of limitations arguments, that he didn't know. And he kept trying to be a part of the military, and they never said to him, you know what, you're permanently disabled. He was never able to appreciate that his injuries were fixed and permanent. So you're saying they couldn't discharge him without sending it to a physical evaluation? Yes, that's what I'm saying. They denied him the physical evaluation board. He should have had that. Your Honor, I believe, I'm hoping that we have reserved at least two or three minutes. We'll give you two minutes. Mr. Hellman. Good morning, Your Honors, and may it please the Court. First, I'd like to touch briefly on this waiver point that was just brought up by opposing counsel that wasn't argued in their briefs. I believe Judge Eich, or Judge Raynor, one of you asked if it was in the record. It was brought up, and the waiver was submitted as part of the briefing for our motion to dismiss. Below, the waiver that Mr. Nelson received, and he received this in September of 2005, end of September, right before he stopped drilling with his National Guard unit. That waiver, he never submitted that to the boards of correction, to the ABCMR, and under this Court's decision in Barnick, 591 F. 3rd, 1372, evidence that could have been submitted to a corrections board but wasn't is not properly before the Court of Federal Claims, and certainly not before this Court. So that's the waiver point, but more importantly, the bigger issue is that Mr. Nelson has not identified any statute or regulation that would have required the Army to have given him an evaluation board. He was not found to be unfit for duty. He was only found to be unfit for appointment. If I understand correctly, they're saying, well, if he were applying to become a commissioned officer in the first instance, he could probably be rejected because of his physical condition, but that somehow this program is different, and that even though they didn't have to give him an appointment as a commissioned officer, they couldn't discharge him from the military entirely without going through the physical evaluation board process. Is my understanding the same as yours as to what they're arguing? I think that's what they're arguing as well. That's what I heard now. I don't think that's exactly what they argued in their briefs, but it sounds like that's what they're arguing now. The first part of that is correct, that Mr. Nelson was found to be ineligible for appointment in the ROTC, the simultaneous program, and that's why he was disenrolled. The regulation for that is 145-1, paragraph 3-43, a scholarship cadet may be disenrolled from the program, and a medical condition that precludes appointment will be cause for disenrollment. In response to your question, they appear to concede that. So he was disenrolled because a medical condition precluded his appointment. That doesn't mean he was unfit for service as an enlisted service member, and there's nothing in the record. There's some indication that he had intermittent joint pain, but as the board found, as the medical evidence shows, he had no limitations, and this is appendix 519, for instance. It's a note from his own doctor from 2003 that says there are currently no restrictions in his military or personal activity. So the Army had no reason to give him MEB, a medical evaluation board. He had no restrictions. Your argument is that the regulation doesn't permit retention of somebody who doesn't qualify for appointment as a commissioned officer. For the ROTC, yes. But as an enlisted service member, he started out, he enlisted in the Army Reserve in early 2002, in September of 2002. It's only later when he got admitted to this simultaneous membership program in the ROTC that he started switching streams. And it turns out he couldn't go down that path because his medical condition would preclude his ultimate appointment. There's no point in him being in the ROTC if he can't be appointed as an officer. It's the Reserve Officers Training Corps. But his enlisted obligation... Even though I didn't qualify for a commission under the ROTC program, I still should have been retained by the military under this particular program. The regulation that you read says you're discharged from the ROTC program. But if I understand their argument, and maybe I'm wrong about this, is that he had some other status other than this ROTC member, which allowed him to be retained by the military. Well, he had enlisted status and he continued to stay in that status for five months. That's what the Court of Federal Claims explained. And I think that's the issue where they are conflating the two standards. They're saying, well, because he was disenrolled from the ROTC program, that automatically means he's considered to have a disability and should have been given the Medical Evaluation Board. They're not going to be arguing that now, right? Well, they're still saying that he should have been given the Medical Evaluation Board. That's what I heard them say. Yeah, but I think what they're saying is he could be retained in the military even without qualifying for a commission under the ROTC program. If that's what they're saying, I think that's the argument that we're making as well. And that's what the Board found and that's what Judge Myers found as well, is that there's a difference between appointment and retention. There was no reason why he couldn't have been retained as an enlisted service member. He wasn't. They seem to be saying because he could have been retained as a service member, but wasn't, the only way that they could get rid of him is through a Physical Evaluation Board. The evidence in the record shows that he was disenrolled. It's not that he was disenrolled from his California Army National Guard at the same time. In fact, I think he continued drilling with that unit. He's not in it anymore, right? He was discharged from that? He wasn't, not automatically, not by operation of this disenrollment from the ROTC, and I think that's the issue. How did he get discharged from the Reserve Program? He subsequently was discharged from the ROTC program. You mean the Reserve Program? I'm sorry. You said ROTC, you mean the Reserve Program? From the California Army National Guard, which it's also a state program. In order to qualify for federal military disability retirement, he'd have to demonstrate that he was somehow under federal status when he was in the state reserve guard unit. That's another issue that he doesn't address. I'm trying to find the record site. The Court of Federal Claims concluded that he stopped drilling with his unit in October of 2005, and then he was discharged from that unit. He was credited with the time. I don't think the orders show why he was discharged. Actually, I think it does. The reason he was there to begin with was because of the simultaneous membership program. Once he's no longer part of that simultaneous membership program, he could have still stayed on. He could have stayed on in a different enlistment status in the National Guard, or possibly he could have gone back to the Army Reserve. But he was also pursuing other—he was pursuing this waiver. He was seeking employment— But his argument is he wasn't allowed to continue. He's not shown any record evidence of that. There's nothing that says he had to be—that he couldn't. And, in fact, the evidence the board found to the contrary, that he could have stayed on as an enlisted— And he chose not to. And he chose not to. That's exactly right. That there's no evidence that he had a disability causing him to be unfit to perform his duties as an enlisted member of the California Army National Guard. And this is at Appendix 540. So there's no indication that he was discharged for that reason. I think the complicating factor in this case is this dual status, the simultaneous membership program that conflated the—well, it didn't conflate, but he was disenrolled because he was ineligible for appointment, and then says that that would mean that he should also have been discharged from all parts of the Army. But as the board found, that's not the regulation. They haven't identified a regulation that requires the Army to do that. So they say, well, the Army didn't follow its own regulations. They don't actually identify the regulations that the Army didn't follow. The only regulation they identify in the brief is Army Regulation 635-40, which is a regulation addressing—it's the physical evaluation and retention and retirement, but that expressly doesn't apply to ROTC cadets. So there's—Dr. Nelson has not identified any regulation that the Army failed to follow here. So the basic difference is they're saying that he was discharged from the military, and your position is he wasn't discharged from the military, only he was denied a commission, and that because he wasn't discharged from the military, there didn't need to be a physical evaluation. That's correct. Now, you said he came into the Army Museum initially. Yes. And in the end, he was in the California National Guard. How did he go from one to the other, and what effect does that have in this case? Sure, Your Honor. So you're correct. He came in initially in the Army Reserve, initially signed up for an eight-year commitment, and that's at Appendix 532. In August of 2004, he—there's a discharge—he discharged from the Army Reserve to enlist in the California Army National Guard, and this is at Appendix 504, 505. Because he found out he was going to be in the simultaneous membership program in ROTC, he wanted to become—to join the National Guard out in California where he was going to be going to school. And so he was able to— Was it a transfer? Essentially a transfer, yeah. You know, they say he discharged from one, but it was the same day he enlisted in the other, but that's what happened. And the discharge rules are the same for both? The discharge rules for— For the Army Reserve and the National Guard? With respect to what facet of discharge? His final discharge. With respect to his— In October. Final discharge in 2005 in October. I don't know if there are any—I mean, they certainly haven't argued that there's any regulation that the National Guard— No, but you mentioned earlier that this is—there are state controls as well as federal, and that that is a complicating factor, but I didn't hear what the factors were and whether it matters to this case. I think I'm missing— on the opinion of briefs. I understand your question, Judge Mayer. I think the issue would be that if he was part of his state's National Guard unit and he is seeking disability retirement, there may be a jurisdictional problem because it's not a federal— depending on the status of his service, if he was— the state National Guard sort of wears dual hats. They're often serving for the state, and then sometimes their service members can be federalized and deployed as Army or Reserve federal components. And so depending on what status he was in, he wouldn't have a claim here against the Army. It would be maybe some sort of state claim against the California Army National Guard. That was a brief below, and that hasn't been certainly raised here, so I don't want to go too far down that path. But that's what it was. That's what I was referring to. There, yes. But your position is that he wasn't discharged at all, whether he was in the reserves of the National Guard after he was exited the ROTC program. He wasn't discharged from either of those options, right? That's correct. If there are no further questions, we respectfully request that you affirm the decision below. Zell, should I ask? Thank you, Judge. Just two points of rebuttal. First, the government is misstating the record. He was absolutely discharged and on the discharge form, and unfortunately, we don't have access to the appendix. We're having some technical difficulty. But the discharge form specifically states that he is being discharged. There is no question that he was discharged, and the discharge was basically... Do you know what page of the appendix that was at? I do not, Your Honor. I do not. I apologize. But because this was a simultaneous program, the discharge had to be concurrent with the disenrollment. In fact, Your Honor, there is... When Mr. Nelson applied to the board for correction, they did relate back the discharge to the disenrollment. So they are acknowledging that it should have happened at the same time. And the fact that it didn't happen at the same time, and the government is saying, I haven't cited any rules, any Army regulations, but they know that the regulations are there. It's Regulation 135 through 178, Chapter 15, Paragraph 8, which specifically relates to Army Regulation 40-501, which states that in this simultaneous cadet program, disenrollment for medical reasons, or when you find that he's unfit, also means discharge. Now, the fact that it didn't happen for five months again militates to the fact that the Army was not following their regulations and doing the things they should have been doing. The fact that he wasn't given a physical evaluation board when he was discharged, and the fact that they did relate back his discharge to the time he was disenrolled all bolsters the fact that they acted arbitrarily and capriciously, and did not base their record on all of the substantive records that were before them. So for those reasons, we ask that this Court reverse the lower court and grant Dr. Melson's motion for a summary judgment on the administrative record. Thank you. Thank you. Thank you both, counsel. The case is submitted. That concludes our session for this morning.